UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE VILLARRUEL et al., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA et al., <br><br> Defendant. | Case No.: 16-CV-2885-CAB-BGS <br><br> **ORDER REGARDING MOTION TO DISMISS AMENDED COMPLAINT** <br><br> [Doc. No. 15] |

On February 13, 2017, Plaintiffs filed their Amended Complaint against the United States of America and two border patrol agents, Scott Garrett and D. Gamboa, and Does 1-25. [Doc. No. 13.] On February 27, 2017, The United States, Garrett and Gamboa (hereinafter "Defendants") filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim. [Doc. No. 15.] On March 19, 2017, Plaintiffs filed a response. [Doc. No. 16.] On March 24, 2017, Defendants filed a reply. [Doc. No. 17.] For the reasons set forth below, the motion **is GRANTED IN PART AND DENIED IN PART**.

ALLEGATIONS OF AMENDED COMPLAINT

The following are allegations as stated in the Amended Complaint:

On September 2, 2015, at about 3:00 p.m., the United States Border Patrol Agency [BPA], operating the Highway 86 checkpoint north of Westmorland, California, inspected a white Nissan pickup truck driven by Jose Villarruel with wife, Maria Villarruel, as passenger. Although the right

1

to be and remain in the United States had been established, the BPA exceeded the permissible administrative purpose of inquiring into the immigration status of persons crossing the checkpoint and were engaged in general criminal investigation without reasonable suspicion or probable cause. [Amended Complaint for Damages, Doc. No. 13, ¶11.]

Border Patrol Agent Gamboa was present at said checkpoint for the express purpose of investigating general criminal activity, including unlawful controlled substance smuggling, thereby knowingly exceeding the permissible limited administrative purpose of checking the immigration status of persons stopped and detained. *Id.* at ¶12.

Agent Gamboa was responsible for training and handling of his canine. The canine was improperly trained; Agent Gamboa improperly handled and/or was improperly trained in the handling of said canine, resulting in false alerts for lawful substances, namely sugar and candy, being identified as unlawful controlled substances. Agent Gamboa knew, or should have known, that he could not rely on alerts from said canine to form a reasonable basis for detention, or probable cause for a search and seizure of Plaintiffs. Nevertheless, Agent Gamboa wrongfully proceeded to stop, detain, and search these motorists, namely said Plaintiffs, for the impermissible purpose of conducting general criminal investigation without reasonable suspicion or probable cause, and wrongfully used the false alert allegedly given by his canine to justify continued unlawful detention, search and seizure of Plaintiffs and their property, all in violation of clearly established law. As a result of these unlawful acts, Plaintiffs Jose and Maria Villarruel were taken to "secondary" inspection where their vehicle was searched, their lawful candy product was seized, along with Plaintiffs' vehicle and personal belongings, and said Plaintiffs were arrested, taken into custody and criminal charges filed against them. *Id*. at ¶12.

During the search of Plaintiffs' vehicle, BPA agents[1] found boxes containing packages which were clearly labeled and indicated a tamarind flavored candy brand "Jhonny dulces de tamarindo". "Jhonny dulces de tamarindo" is a brand owned, and sold by Jose Villarruel, Maria Villarruel, and Arturo Villarruel, and was at that time a successful business enterprise both in the United States and in Mexico. Id. at ¶13.

---

[1] The complaint's general reference to unidentified "BPA agents" is interpreted to refer to the actions of all or some of the Doe defendants 1-25. Actions attributed to "BPA agents" are not understood to allege actions specific to the named agents Gamboa or Garrett.

BPA agents allegedly performed a field test on said candy which they alleged resulted in a presumptive positive for methamphetamine. The combined weight was allegedly 930.1 pounds, or 421.9 kilograms. *Id*. at ¶14.

At the time of performing the field test, BPA agents were aware that test results were inherently unreliable and must be confirmed by laboratory testing as the field test frequently provides false positive results on substances which are neither methamphetamine or illegal. Further, on information and belief, BPA agents failed to take into consideration the color of dye in candy could cause them to misread a negative as a false positive with the field test. *Id.* at ¶15.

Jose Villarruel and Maria Villarruel were arrested and taken into custody by the BPA. The candy products and vehicle were seized. *Id*. at ¶16.

The BPA then proceeded, without performing any confirmatory testing, to disseminate information to the public including news media alleging a large scale seizure of methamphetamine, disseminating the names of Jose and Maria Villarruel, and the name of the said candy brand as being methamphetamine disguised as candy. *Id*. at ¶17.

On September 3, 2015, a criminal complaint, also available to the public was filed against Jose Villarruel Zendejas (this said Jose Villarruel) and Maria Villarruel charging each with violating Title 21, United States Code Section 841(a)(1), possession of a controlled substance with intent to distribute. The "Statement of Facts" attached to the complaint identified the substance that allegedly tested positive for methamphetamine as "Jhonny Dulces Mexican Candy", the product owned and sold by Jose Villarruel, Maria Villarruel, and Arturo Villarruel. *Id*. at ¶18.

News media both in the United States and in Mexico published the information provided by Defendants to both the public and media in both the United States and Mexico, naming Plaintiffs Jose Villarruel and Maria Villarruel and stating that "Jhonny Dulces Mexican Candy" was methamphetamine-laced candy. Defendant Scott Garrett was also quoted when referring to said Plaintiffs: "Criminals continue to come up with creative ways to smuggle their narcotics and agents continue to do whatever it takes to stay one step ahead of them." *Id*. at ¶19.

Subsequent laboratory testing was performed which confirmed that in truth and fact there was no methamphetamine or other unlawful substance present in Plaintiffs' vehicle or said candy, resulting in the criminal charges against Jose Villarruel, and Maria Villarruel being dismissed on September 4, 2015. Nevertheless, Defendants, and each of them failed and refused to retract their previously disseminated information and said false allegations continue to be randomly re-published. *Id*. at ¶20.

As a proximate result of the foregoing Plaintiffs Jose Villarruel and Maria Villarruel were deprived of their right to be free from unreasonable stop, detention, search and seizure, and were in fact detained and falsely imprisoned, their property was wrongfully seized and right of possession substantially interfered with. *Id*. at ¶21-26.

Based on these allegations, Plaintiffs bring four claims under *Bivens v. Six Unknown Federal Narcotics Agents ("Bivens")*, 203 U.S. 388 (1971) for: (1) violation of the Fourth Amendment (for the unreasonable search and seizure of both Jose and Maria Villarruel and excessive force in the seizure of Jose Villarruel); (2) violation of the Fifth Amendment (for the deprivation of Jose, Maria and Arturo Villaruel's liberty and property without due process) ; (3) failure to properly train; and (4) failure to properly supervise and discipline. Plaintiffs also bring four claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §2671, against Defendant United States of America for: (5) intentional tort – violation of rights secured by the federal and state constitution; (6) intentional tort – false imprisonment; (7) invasion of privacy; and (8) negligence.

## DISCUSSION

A. Legal Standard.

On a motion to dismiss pursuant to Rule 12(b)(1), the standard to be applied varies according to the nature of the jurisdictional challenge. A motion to dismiss for lack of subject matter jurisdiction may either attack the allegations of jurisdiction contained in the complaint as insufficient on their face to demonstrate the existence of jurisdiction ("facial attack"), or may be made as a "speaking motion" attacking the existence of

4

subject matter jurisdiction in fact ("factual attack"). *Thornhill Publishing Co. v. General Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir.1979); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d. Cir.1977). If the motion constitutes a facial attack, the court must consider the factual allegations of the complaint to be true. *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir.1981); *Mortensen*, 549 F.2d at 891. If the motion constitutes a factual attack, however, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Thornhill,* 594 F.2d at 733 (*quoting Mortensen*, 549 F.2d at 889).

In an action where the United States is named as a defendant, a court will have no subject matter jurisdiction unless a specific statute can be relied upon which waives the Government's sovereign immunity. *United States v. Alabama*, 313 U.S. 274, 61 S.Ct. 1011, 85 L.Ed. 1327 (1941); *Soriano v. United States*, 352 U.S. 270, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957). "Limitations and conditions upon which the government consents to be sued must be strictly observed and exceptions are not to be implied." Soriano, 352 U.S. at 276, 77 S.Ct. at 273. *See also United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969).

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted"— generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand . . . more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*.

(quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the collective facts pled "allow . . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id*. (quoting *Twombly*, 550 U.S. at 557). The Court need not accept as true "legal conclusions" contained in the complaint, id., or other "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

If the court grants a motion to dismiss a complaint, it must then decide whether to grant leave to amend. Under Rule 15(a), when there is no "[u]ndue delay, bad faith[,] dilatory motive on the part of the movant,... undue prejudice to the opposing party by virtue of ... the amendment, [or] futility of the amendment," leave to amend a complaint is to be "freely given." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Generally, leave to amend is denied only if it is clear that the deficiencies of the complaint cannot be cured by amendment. *Broughton v. Cutter Labs*., 622 F.2d 458, 460 (9th Cir.1980).

B. Analysis.

1. Failure to state a claim.

Defendants argue that the first through fourth causes of action, brought pursuant to *Bivens,* fail to state a cause of action.

A *Bivens* action is the federal analog to suits brought against state officials under 42 U.S.C. § 1983. *Hartman v. Moore*, 547 U.S. 250, 126 S.Ct. 1695 (2006). The basis of a *Bivens* action is some illegal or inappropriate conduct on the part of a federal official or agent that violates a clearly established constitutional right. *Baiser v. Department of Justice, Office of U.S. Trustee,* 327 F.3d 903, (9th Cir. 2003). "To state a claim for relief under *Bivens,* a plaintiff must allege that a federal officer deprived him of his constitutional rights." *Serra v. Lappin*, 600 F.3d 1191, 1200 (9th Cir. 2010) (citing see

*Schearz v. United States*, 234 F.3d 428, 432 (9th Cir. 2000)). A *Bivens* claim is only available against officers in their individual capacities. *Morgan v. U.S.*, 323 F.3d 776, 780 n.3 (9th Cir. 2003); *Vaccaro v. Dobre*, 81 F.3d 854, 857 (9th Cir. 1996). "A plaintiff must plead more than a merely negligent act by a federal official in order to state a colorable claim under *Bivens*." *O'Neal v. Eu*, 866 F.2d 314, 314 (9th Cir. 1988). Plaintiff must allege facts linking each named defendant to the violation of his rights. *Iqbal*, 556 U.S. at 676; *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). The factual allegations must be sufficient to state a plausible claim for relief, and the mere possibility of misconduct falls short of meeting this plausibility standard. *Iqbal*, 556 U.S. at 678-79; *Moss*, 572 F.3d at 969.

To state a claim against Defendants, Plaintiff must allege facts linking each named defendant to the violation of his rights. *Iqbal*, 556 U.S. at 676; *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

    a. First Cause of Action.

        1. Unreasonable search and seizure.

It is well-established that victims of Fourth Amendment violations caused "by federal officers may bring suit for money damages against the officers in federal court." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66–67 (2001) (citing *Bivens,* 403 U.S. at 396). The Fourth Amendment protects persons against "unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment also protects individual privacy against certain kinds of governmental intrusion. *Katz v. United States*, 389 U.S. 347, 350, 88 S. Ct. 507, 510, 19 L.Ed. 2d 576 (1967).

Here, Plaintiffs allege that defendants Gamboa, Garrett and Does 1-25 operated the Highway 86 Border Checkpoint "for the unconstitutional purpose of stopping vehicles without reasonable suspicion or probable cause for a primary purpose of general criminal investigation, including detection of contraband, including illegal drugs, thereby greatly

exceeding the permissible administrative purpose of investigating the immigration status of persons." [Doc. No. 13, ¶30.] Defendants argue that Plaintiffs fail to state a claim because it is well-settled that immigration checkpoints are constitutional, and Plaintiffs' allegations are too conclusory to state a claim. [Doc. No. 15-1 at 4-5.]

In *United States v. Soto–Camacho*, 58 F.3d 408 (9th Cir.1995), the Court of Appeals for the Ninth Circuit rejected a Fourth Amendment challenge to a Border Patrol checkpoint located near Jacumba, California. The Court of Appeals explained, "its primary purpose is to check for aliens, all vehicles are stopped, the checkpoint is well identified, Border Patrol agents exercise no discretion over the checkpoint's operation, and the stop itself involves a minimal intrusion." *Id*. at 411. The Court of Appeals concluded, "We ... hold that the Jacumba checkpoint stop itself was not infected . . . by the fact that the Border Patrol bases the timing of its decision to set up the checkpoint in part on drug intelligence." *Id*. at 412.

At least one district court has upheld the constitutionality of the Highway 86 Border Patrol checkpoint. *U.S. v. Summers*, 153 F.Supp.3d 1261, 1266-67 (S.D. Cal. 2015). However, that was in the context of a motion to suppress in a criminal case where evidence was presented regarding how many apprehensions in the prior three-year period were immigration-related versus drug-related. Based upon the record in that case, the district court found that the primary purpose of the checkpoint is to check for aliens, and that there was no evidence the checkpoint was operated for any purpose other than immigration enforcement. *Id.* at 1267.

Finally, in *United States v. Soto-Zuniga*, 837 F.3d 992, 1002 (9th Cir. 2016), the Ninth Circuit held that a district court abused its discretion by denying a drug defendant's pretrial motion for discovery regarding the number and type of arrests and vehicle searches at a border patrol immigration checkpoint, to support his motion challenging the constitutionality of the checkpoint based on the argument that the government was using the checkpoint as a pretext to search for controlled substances, not to control immigration. The Ninth Circuit reasoned that discovery could have revealed an

unconstitutional seizure and led to the suppression of evidence that illicit drugs were found in the defendant's car. *Id.*

These cases show that internal immigration checkpoint stops are permissible as warrantless searches as long as officials effecting the stops remain within the bounds of their narrowly circumscribed authority. *Martinez-Fuerte*, 428 U.S. at 556-567. Individuals may challenge the constitutionality of a checkpoint and obtain discovery as to whether it is operated in a constitutional manner. *See Soto-Zuniga*, 837 F.3d at 1002.

Here, in the first cause of action, Plaintiffs allege that the Highway 86 Border Patrol Checkpoint was operated by Garrett and Gamboa "for the unconstitutional purpose of stopping vehicles without reasonable suspicion or probable cause for a primary purpose of general criminal investigation, including detection of contraband, including illegal drugs, thereby greatly exceeding the permissible administrative purpose of investigating the immigration status of persons." [Doc. No. 13, ¶30.] Plaintiffs further allege that the "stop, detention, and search of Plaintiffs and their vehicle was without reasonable suspicion that a crime was being committed in violation of the Fourth Amendment to the United States Constitution and was not in furtherance of a narrowly tailored permissible administrative purpose permitting the stop of vehicles without reasonable suspicion or probable cause." *Id.* at ¶31.

Contrary to Defendants' assertions, Plaintiffs are not contesting the general constitutionality of the internal checkpoint. Rather, Plaintiffs are alleging that, in this instance, the stop, search, and detention were done intentionally for the primary purpose of general criminal investigation and, therefore, were unconstitutional. That is sufficient to state a *Bivens* claim for Fourth Amendment violation. *See United States v. Soto–Zuniga*, 837 F.3d 992, 998 (9th Cir. 2016) ("[t]he Fourth Amendment prohibits unreasonable searches and seizures"); *Quilici v. California Highway Patrol* (E.D. Cal., Jan. 24, 2017, No. 2-16-cv-1523 MCE AC (PS)), 2017 WL 345523, at *3. Therefore, the motion to dismiss the first cause of action as to unreasonable search and seizure is **DENIED**.

### 2. Excessive force.

Also alleged in the first cause of action is an excessive force claim against Doe 1. Excessive force claims are also governed by the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865 (1989). Plaintiff Jose Villareal alleges Doe 1 shoved him without cause, thereby using excessive force in his seizure of the Mr. Villareal. [Doc. No. 13, ¶¶22, 32.] However, Plaintiffs do not allege the use of excessive force by any other defendant. Therefore, the motion to dismiss the excessive force claim for failure to state a claim as to Defendants Garrett and Gamboa is **GRANTED WITHOUT LEAVE TO AMEND**. The motion is **DENIED** as to Doe 1 only.

### b. Second cause of action.

For the second cause of action, Plaintiffs allege that the Border Patrol Agency[2] disseminated information to the public including news media alleging Jose and Maria Villarruel imported methamphetamine-laced candy. [Doc. No. 13, ¶¶17,19.] Plaintiffs allege this public statement was made based on inherently unreliable and false allegations and deprived them and plaintiff Arturo Villarruel of their "liberty interest in their good name and their property interest in their business and candy brand." [Doc. No. 13, ¶38.] Plaintiffs allege that by making the public statements the Border Patrol Agency failed to provide Plaintiffs "with the minimum requirements of *due process* of law prior to listing them in public publications as criminals who disguised large quantities of methamphetamine as candy." *Id.* at ¶40.

In their original complaint, Plaintiffs sought to bring a claim under the FTCA based upon similar allegations. [Doc. No. 1 at 7.] However, as Defendants pointed out in a previous motion to dismiss [Doc. No. 9-1 at 6], the FTCA does not extend to the tort

---

[2] The Plaintiffs' factual allegations only identify Defendant Scott Garrett individually as being part of this dissemination. The motion to dismiss this claim as to Defendant Gamboa therefore is GRANTED WITHOUT LEAVE TO AMEND separately on the basis that the complaint fails to make any factual allegations that he disseminated any defamatory public statements.

causes of action of defamation, slander and libel.  28 U.S.C. §§1346(b), 2680(h). Plaintiffs subsequently dismissed that claim and have brought this claim as a purported *Bivens* claim for a Fifth Amendment violation.  Defendants argue that these allegations are insufficient to state a Fifth Amendment claim.

The Due Process Clause of the Fifth Amendment forbids the federal government from depriving persons of "life, liberty, or property, without due process of law." U.S. Const. amend. V.  Plaintiffs allege injury to their personal reputations and damage to the reputation of their business "Jhonny Dulces Mexican Candy," that has had a negative impact on their business enterprise.

The Plaintiffs have no federally protected right or legal guarantee of a good reputation.  Reputation is neither a liberty nor property interest guaranteed against deprivation without due process.  *See Paul v. Davis*, 424 U.S. 785, 708-712 (1976) (a defamatory publication, however seriously it may have harmed someone's reputation, did not deprive him of any liberty or property interest protected by the Due Process Clause). *See also Hart v. Parks*, 450 F.3d 1059, 1069-70 (9th Cir. 2006) (affirming that damage to reputation alone caused by police press release is not actionable as a §1983 claim for due process violation).

The allegation that the defamatory remarks also affected the reputation of their business resulting in the loss of goodwill, sales and their business relationships does not make this a "stigma-plus" violation subject to a due process claim.  *Paul*, 424 U.S. at 712.  Damage to business goodwill does not go beyond injury to business reputation. "Damage to the reputation of a business, without more, does not rise to the level of a constitutionally protected property interest." *WMX Technologies, Inc. v. Miller,* 197 F.3d 367, 376 (9th Cir. 1999)(en banc).

Therefore, the motion to dismiss the second cause of action is **GRANTED WITHOUT LEAVE TO AMEND**.[3]

### c. Third Cause of Action.

In the third cause of action, Plaintiffs allege that Garrett, Gamboa and Does 10 through 25 failed to adequately train their subordinates. Defendants argue that Plaintiffs have only alleged generalities and therefore have not stated a claim. [Doc. No. 15-1 at 7-8.]

It is well-established that a governmental officer may be held liable for damages for constitutional wrongs engendered by his failure to adequately supervise or train his subordinates. *Ting v. U.S*., 927 F.2d 1504, 1512 (9th Cir. 1991), citing *Bergquist v. County of Cochise*, 806 F.2d 1364, 1369–70 (9th Cir.1986). Similarly, a governmental entity may also be liable for due process violations which result from its failure to train its employees. *Id*. However, the inadequacy of police training may serve as a basis for liability under section 1983 or *Bivens* "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Ting*, 927 F. 2d at 1512, quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Mere negligence by the supervisor is insufficient. *Ting*, 927 F. 2d at 1512.

Here, as to the third cause action against defendant Garrett, Plaintiffs allege that Garrett "failed to maintain adequate and proper training necessary to educate BPA agents as [*sic*] the Constitutional rights of the public . . ."[Doc. No. 13, ¶45], "knew or should have known that agents were violating people's constitutional rights by using internal checkpoints for a primary purpose of general criminal investigation without reasonable suspicion or probable cause . . . "[*Id.* at ¶47], and "failed to promulgate corrective policies and regulations in the face of repeated Constitutional violations"[*Id.* at ¶48].

---

[3] This appears to be the only cause of action involving Plaintiff Arturo Villareal, although the Third, Fourth, Fifth, Seventh and Eight causes of action purport to be on behalf of "all" Plaintiffs. To the extent leave to amend has been granted, should Plaintiffs file a Second Amended Complaint, they must include specific allegations showing how Arturo Villareal has standing to bring those claims.

However, Plaintiffs have not alleged **how** defendant Garrett knew or should have known that agents were violating people's constitutional rights, and have failed to allege **facts** showing repeated Constitutional violations. Therefore, the motion to dismiss the third cause of action as to defendant Garrett is **GRANTED WITH LEAVE TO AMEND**.

As to defendant Gamboa, Plaintiffs allege that he failed to properly train his canine in the detection of controlled substances and/or failed to obtain proper training in the handling of his canine because he relied on a false alert. [Doc. No. 13, ¶¶ 12, 46.] These are conclusory statements unsupported by any factual allegations. The Plaintiffs offer no factual support that Gamboa failed to properly train his canine, only that he wrongfully used a false alert allegedly given by the canine to justify Plaintiffs' detention and search. The Plaintiffs only alleged a single negligent instance of relying on a false alert by the canine, rather than a failure to train evidencing deliberate indifference to the rights of others. Therefore, the motion to dismiss the third cause of action as to defendant Gamboa is **GRANTED WITH LEAVE TO AMEND.**

d. Fourth Cause of Action.

In the fourth cause of action, Plaintiffs allege that defendant Garrett and Does 10-25 failed to provide adequate supervision and discipline. Again, Defendants argue the allegations are too vague to state a claim. [Doc. No. 15-1 at 7-8.]

As to the Fourth Cause of Action, Plaintiffs allege that defendant Garrett "failed to provide adequate supervision to officers that hold the power, authority, insignia, and equipment entrusted to them, including D. Gamboa . . ." [Doc. No. 13, ¶51], "failed to promulgate and enforce adequate policies regarding misconduct . . . " [*Id.* at ¶52], has a "widespread history of ratifying illegal searches and seizures . . . [*Id.* at ¶53], "knew or should have known that agents, including D. Gamboa . . . were violating people's constitutional rights by use of internal checkpoints for general criminal investigation . . . [*Id.* at ¶54], and "failed to promulgate corrective policies and regulations in the face of repeated Constitutional violations"[*Id.* at ¶56]. Again, Plaintiffs fail to allege **how** Garrett knew or should have known that agents were violating people's constitutional

13

16-CV-2885-CAB-BGS

1 | rights, and fail to allege **facts** showing a widespread history of ratifying illegal searches.
Therefore, the motion to dismiss the Fourth Cause of Action as to defendant Garrett is
**GRANTED WITH LEAVE TO AMEND**.

e. Sixth Cause of Action.

Plaintiff's sixth cause of action is an FTCA claim for the intentional tort of false imprisonment. Defendants acknowledge that such a claim may be brought under the FTCA, but argue that Plaintiffs fail to allege sufficient facts to state a claim. [Doc. No. 15-1 at 11.]

Under California law, the elements of false imprisonment are: (1) the nonconsensual, intentional confinement of person; (2) without lawful privilege; and (3) for an appreciable period of time. *Tekle v. U.S.*, 511 F.3d 839, 854 (9th Cir. 2007) (citations omitted). A false arrest is one way of committing the tort of false imprisonment. *Watts v. County of Sacramento*, 256 F.3d 886, 891 (9th Cir. 2001).

The FTCA specifically permits liability for false arrest when committed by federal law enforcement officers. See 28 U.S.C. § 2680(h). Under the FTCA, "[l]iability is determined by the tort law of the state where the claim arose." *Gasho v. United States*, 39 F.3d 1420, 1427 (9th Cir. 1994). In general, the United States is liable "to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. California law "protects a law enforcement officer from liability for false arrest...where the officer, acting within the scope of his or her authority, either (1) effects a lawful arrest or (2) has reasonable cause to believe the arrest is lawful." *Cervantes v. United States*, 330 F.3d 1186, 1188 (9th Cir. 2003).

Defendants argue that the BPA arrested Plaintiffs after the dog alerted and the candy field-tested positive for drugs and, therefore, they had probable cause to arrest. [Doc. No. 15-1 at 11.] However, the sixth cause of action also alleges that the "continued detention after confirming Plaintiffs' lawful right to be within the United States was without lawful right and the fruits of a policy that violates clearly established law limiting the administrative purpose of stopping motorists . . . "[Doc. No. 13, ¶67]. This unlawful

14

continued detention allegedly occurred before the dog alert and field test. [*Id.* at ¶69.] Thus, Plaintiffs have sufficiently stated a claim for false imprisonment. Therefore, the motion to dismiss the sixth cause of action is **DENIED.**

      f. Eighth Cause of Action.

  Plaintiff's eighth cause of action is an FTCA claim for negligence. Again, Defendants acknowledge that such a claim may be brought under the FTCA, but argue that Plaintiffs fail to allege sufficient facts to state a claim. [Doc. No. 15-1 at 12.]

  To state a claim for negligence under California law, Plaintiff must show: (1) a legal duty to use due care; (2) breach of that duty; (3) the breach was the proximate or legal cause of the resulting injury; and (4) actual loss or damage resulting from the breach of the duty of care. *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 534 (2009). Defendants argue that no breach of duty is alleged because the agents had reasonable cause to arrest based on the dog alert and the positive field test. [Doc. No. 15-1 at 12.] However, as stated above, Plaintiffs also allege that the negligence occurred prior to the dog alert, when defendants allegedly detained them for the "improper purposes of general investigation." [Doc. No. 13, ¶79.] Thus, Plaintiffs have sufficiently stated a claim for negligence. Therefore, the motion to dismiss the eighth cause of action is **DENIED**.

    2. Lack of subject matter jurisdiction.

      a. Fifth Cause of Action.

  Plaintiffs' fifth cause of action is an FTCA claim made against the United States pursuant to California Civil Code § 52.1. Defendants argue that this claim must be dismissed as the United States has not waived its sovereign immunity with respect to *Bivens* claims. Defendants further argue that Plaintiffs' constitutional tort theories alleged under the United States Constitution are improper and that, in essence, Plaintiffs seek to bring *Bivens* type actions against the United States itself. [Doc. No. 15-1 at 8-10.] Plaintiffs argue that this cause of action is appropriate because it is based on violations of state law and State Constitution, as well as state law relating to the use of force, coercion, and intimidation in a violation of Fourth Amendment Rights. [Doc. No. 16 at 9.]

15

Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (internal citations omitted). The FTCA waives the Federal Government's sovereign immunity for certain torts committed by federal employees. 28 U.S.C. § 1346. However, constitutional tort claims are not cognizable under § 1346(b) and thus not actionable. *Meyer*, 510 U.S. at 475. To be actionable under § 1346, a claim must allege, *inter alia*, that the United States "would be liable to the claimant" as "a private person" "in accordance with the law of the place where the act or omission occurred." *Id*. ("The United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims.").

California Civil Code Section 52.1 provides that if a person interferes, or attempts to interfere, by threats, intimidation, or coercion with the exercise of enjoyment of the constitutional or statutory rights of any individual, the individual may sue for damages independently of any other action that is available. Cal. Civil Code §52.1(a). Here, Plaintiffs claim their rights were violated by unreasonable searches and seizures in violation of the Fourth Amendment to the United States Constitution, and Article I, Section 13 of the California Constitution. [Doc. No. 13, ¶59.]

To the extent the fifth cause of action is premised upon violations of the United States Constitution, it is improper. The FTCA only subjects the United States to liability of a "private person." *Meyer*, 510 U.S. at 475. "A wrongful search or seizure by a private party does not violate the fourth amendment." *U.S. v. Walther*, 652 F.2d 788, 791 (9th Cir. 1981). "With a few exceptions, such as the provisions of the Thirteenth Amendment, constitutional guarantees of individual liberty and equal protection do not apply to the actions of private entities." *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 619, 111 S.Ct. 2077 (1991). What Plaintiffs seek basically amounts to a claim based on federal constitutional violations that cannot be the basis of liability under the FTCA. *See Delta Savings Bank v. United* States, 265 F.3d 1017, 1026(9th Cir. 2001)(Plaintiff's Section 52.1 claims rejected as "an attempt to do an 'end around' the local law requirements of the FTCA"); Reynoso *v. United States*, No. 13-cv-718-AJB-RBB, 2013 U.S. Dist. LEXIS

157887, \*\*9-11 (S.D. Cal. 2013)(dismissing Section 52.1 claims against the United States and holding: "While California Civil Code §52.1 allow for such claims as a matter of state law, this Federal District Court finds them improper as the Supreme Court has expressly denied the applicability of the FTCA to constitutional tort claims."); *Munyua v. United States*, No.C-03-04538 EDL, 2005 WL 43960, at \*12 (N.D. Cal. Jan. 10, 2005)(granting defendant United States' summary judgment on plaintiff's claims made under California Civil Code § 52.1 and stating "[t]he Court is also wary of allowing Plaintiff to make what amounts to a claim based on federal constitutional violations that cannot be a basis of liability under the FTCA."). Therefore, to the extent the fifth cause of action is based upon violations of federal law, it is not allowed. *Delta Savings Bank,* 265 F.3d at 1026.

To the extent the claim is based upon violations of state law and the State Constitution, it also may not proceed because Section 52.1 claims may not be brought against private actors. *Jones v. Kmart*, 17 Cal.4th 329, 335-36 (1998)( Section 52.1 does not apply to private actors' putative violations of legal guarantees that only limit a state's power). Thus, even for violations of state law and the State Constitution, Section 52.1 cannot be the basis of an FTCA claim, which only subjects the United States to liability of a "private person." *Meyer*, 510 U.S. at 475. Therefore, the motion to dismiss the fifth cause of action is **GRANTED WITHOUT LEAVE TO AMEND.**

  b. Seventh Cause of Action.

In the seventh cause of action, Plaintiffs allege an unlawful search that constitutes an invasion of privacy in violation of the California Constitution. [Doc. No. 13, ¶73.] Defendants argue that the United States is immune from suit for such an alleged constitutional tort. [Doc. No. 15-1 at 11-12.]

Unlike claims under California Civil Code Section 52.1, private individuals can be held liable for violating the California Constitution's right to privacy. *Hill v. National Collegiate Athletic Assn.*, 7 Cal.4th 1, 16 (1994); *Jones*, 17 Cal.4th at 338. Such alleged violations of the state constitution are treated as FTCA claims. *See Papa v. United*

*States*, 281 F.3d 1004, 1010 n. 20 (9th Cir. 2002).  Therefore, the motion to dismiss the seventh cause of action is **DENIED**.

CONCLUSION

For the reasons set forth above, the motion to dismiss is **GRANTED IN PART AND DENIED IN PART** as follows:

1. **DENIED** as to the unreasonable search and seizure claim in the first cause of action, **GRANTED WITHOUT LEAVE TO AMEND** as to the excessive force claim in the first cause of action as to defendants Garrett and Gamboa (but **DENIED** as to Doe 1);
2. **GRANTED WITHOUT LEAVE TO AMEND** as to the second cause of action;
3. **GRANTED WITH LEAVE TO AMEND** as to the third cause of action as to Defendants Garrett and Gamboa;
4. **GRANTED WITH LEAVE TO AMEND** as to the fourth cause of action;
5. **GRANTED WITHOUT LEAVE TO AMEND** as to the fifth cause of action;
6. **DENIED** as to the sixth cause of action;
7. **DENIED** as to the seventh cause of action;
8. **DENIED** as to the eighth cause of action.

If Plaintiffs wish to file a Second Amended Complaint (SAC), they must do so by **July 17, 2017.**  If Plaintiffs do not file an SAC by that date, then Defendants shall **answer** the Amended Complaint, as modified by this order, by **July 31, 2017**.

**IT IS SO ORDERED**.

Dated:  June 26, 2017

Hon. Cathy Ann Bencivengo
United States District Judge