# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE VILLARRUEL et al., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA et al., <br><br> Defendant. | Case No.: 16-CV-2885-CAB-BGS <br><br> **ORDER REGARDING MOTION TO DISMISS SECOND AMENDED COMPLAINT** <br><br> [Doc. No. 20] |

On February 13, 2017, Plaintiffs filed their Amended Complaint against the United States of America and two border patrol agents, Scott Garrett and D. Gamboa, and Does 1-25. [Doc. No. 13.] On February 27, 2017, The United States, Garrett and Gamboa (hereinafter "Defendants") filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim. [Doc. No. 15.] On June 26, 2017, this Court issued an order granting in part and denying in part the motion to dismiss. [Doc. No. 18.]

On July 17, 2017, Plaintiff filed a Second Amended Complaint ("SAC"). [Doc. No. 19.] On July 31, 2017, Defendants filed a motion to dismiss the SAC. [Doc. No. 20.] On August 9, 2017, Plaintiffs filed an opposition to the motion. [Doc. No. 21.] On August 30, 2017, Defendants filed a reply to the opposition. [Doc. No. 22.] For the reasons set forth below, the motion to dismiss is **DENIED**.

# ALLEGATIONS OF FIRST AMENDED COMPLAINT

The pertinent allegations in the Amended Complaint were as follows:

On September 2, 2015, at about 3:00 p.m., the United States Border Patrol Agency [BPA], operating the Highway 86 checkpoint north of Westmorland, California, inspected a white Nissan pickup truck driven by Jose Villarruel with wife, Maria Villarruel, as passenger. Although the right to be and remain in the United States had been established, the BPA exceeded the permissible administrative purpose of inquiring into the immigration status of persons crossing the checkpoint and were engaged in general criminal investigation without reasonable suspicion or probable cause. [Amended Complaint for Damages, Doc. No. 13, ¶11.]

Border Patrol Agent Gamboa was present at said checkpoint for the express purpose of investigating general criminal activity, including unlawful controlled substance smuggling, thereby knowingly exceeding the permissible limited administrative purpose of checking the immigration status of persons stopped and detained. *Id.* at ¶12.

Agent Gamboa was responsible for training and handling of his canine. The canine was improperly trained; Agent Gamboa improperly handled and/or was improperly trained in the handling of said canine, resulting in false alerts for lawful substances, namely sugar and candy, being identified as unlawful controlled substances. Agent Gamboa knew, or should have known, that he could not rely on alerts from said canine to form a reasonable basis for detention, or probable cause for a search and seizure of Plaintiffs. Nevertheless, Agent Gamboa wrongfully proceeded to stop, detain, and search these motorists, namely said Plaintiffs, for the impermissible purpose of conducting general criminal investigation without reasonable suspicion or probable cause, and wrongfully used the false alert allegedly given by his canine to justify continued unlawful detention, search and seizure of Plaintiffs and their property, all in violation of clearly established law. As a result of these unlawful acts, Plaintiffs Jose and Maria Villarruel were taken to "secondary" inspection where their vehicle was searched, their lawful candy product was seized, along with Plaintiffs' vehicle and personal belongings, and said Plaintiffs were arrested, taken into custody and criminal charges filed against them. *Id.* at ¶12.

During the search of Plaintiffs' vehicle, BPA agents[1] found boxes containing packages which were clearly labeled and indicated a tamarind flavored candy brand "Jhonny dulces de tamarindo". "Jhonny dulces de tamarindo" is a brand owned, and sold by Jose Villarruel, Maria Villarruel, and Arturo Villarruel, and was at that time a successful business enterprise both in the United States and in Mexico. Id. at ¶13.

BPA agents allegedly performed a field test on said candy which they alleged resulted in a presumptive positive for methamphetamine. The combined weight was allegedly 930.1 pounds, or 421.9 kilograms. *Id*. at ¶14.

At the time of performing the field test, BPA agents were aware that test results were inherently unreliable and must be confirmed by laboratory testing as the field test frequently provides false positive results on substances which are neither methamphetamine or illegal. Further, on information and belief, BPA agents failed to take into consideration the color of dye in candy could cause them to misread a negative as a false positive with the field test. *Id.* at ¶15.

Jose Villarruel and Maria Villarruel were arrested and taken into custody by the BPA. The candy products and vehicle were seized. *Id*. at ¶16.

The BPA then proceeded, without performing any confirmatory testing, to disseminate information to the public including news media alleging a large scale seizure of methamphetamine, disseminating the names of Jose and Maria Villarruel, and the name of the said candy brand as being methamphetamine disguised as candy. *Id*. at ¶17.

On September 3, 2015, a criminal complaint, also available to the public was filed against Jose Villarruel Zendejas (this said Jose Villarruel) and Maria Villarruel charging each with violating Title 21, United States Code Section 841(a)(1), possession of a controlled substance with intent to distribute. The "Statement of Facts" attached to the complaint identified the substance that allegedly tested positive for methamphetamine as "Jhonny Dulces Mexican Candy", the product owned and sold by Jose Villarruel, Maria Villarruel, and Arturo Villarruel. *Id*. at ¶18.

---

[1] The complaint's general reference to unidentified "BPA agents" is interpreted to refer to the actions of all or some of the Doe defendants 1-25. Actions attributed to "BPA agents" are not understood to allege actions specific to the named agents Gamboa or Garrett.

News media both in the United States and in Mexico published the information provided by Defendants to both the public and media in both the United States and Mexico, naming Plaintiffs Jose Villarruel and Maria Villarruel and stating that "Jhonny Dulces Mexican Candy" was methamphetamine-laced candy. Defendant Scott Garrett was also quoted when referring to said Plaintiffs: "Criminals continue to come up with creative ways to smuggle their narcotics and agents continue to do whatever it takes to stay one step ahead of them." *Id*. at ¶19.

Subsequent laboratory testing was performed which confirmed that in truth and fact there was no methamphetamine or other unlawful substance present in Plaintiffs' vehicle or said candy, resulting in the criminal charges against Jose Villarruel, and Maria Villarruel being dismissed on September 4, 2015. Nevertheless, Defendants, and each of them failed and refused to retract their previously disseminated information and said false allegations continue to be randomly re-published. *Id*. at ¶20.

As a proximate result of the foregoing Plaintiffs Jose Villarruel and Maria Villarruel were deprived of their right to be free from unreasonable stop, detention, search and seizure, and were in fact detained and falsely imprisoned, their property was wrongfully seized and right of possession substantially interfered with. *Id*. at ¶21-26.

Based on these allegations, Plaintiffs brought four claims under *Bivens v. Six Unknown Federal Narcotics Agents ("Bivens")*, 203 U.S. 388 (1971) for: (1) violation of the Fourth Amendment (for the unreasonable search and seizure of both Jose and Maria Villarruel and excessive force in the seizure of Jose Villarruel); (2) violation of the Fifth Amendment (for the deprivation of Jose, Maria and Arturo Villaruel's liberty and property without due process) ; (3) failure to properly train; and (4) failure to properly supervise and discipline.  Plaintiffs also brought four claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §2671, against Defendant United States of America for: (5) intentional tort – violation of rights secured by the federal and state constitution; (6) intentional tort – false imprisonment; (7) invasion of privacy; and (8) negligence.

On June 26, 2017, this Court issued an order granting in part and denying in part the motion to dismiss the amended complaint as follows:

4

1. DENIED as to the unreasonable search and seizure claim in the first cause of action, GRANTED <u>WITHOUT</u> LEAVE TO AMEND as to the excessive force claim in the first cause of action as to defendants Garrett and Gamboa (but DENIED as to Doe 1);
2. GRANTED <u>WITHOUT</u> LEAVE TO AMEND as to the second cause of action (Fifth Amendment violation);
3. GRANTED WITH LEAVE TO AMEND as to the third cause of action (failure to properly train) as to Defendants Garrett and Gamboa;
4. GRANTED WITH LEAVE TO AMEND as to the fourth cause of action (failure to properly supervise and discipline);
5. GRANTED <u>WITHOUT</u> LEAVE TO AMEND as to the fifth cause of action (FTCA claim based upon Cal. Civil Code §52.1);
6. DENIED as to the sixth cause of action (false imprisonment);
7. DENIED as to the seventh cause of action (invasion of privacy);
8. DENIED as to the eighth cause of action (negligence).

[Doc. No. 18 at 18.]

## ALLEGATIONS OF SECOND AMENDED COMPLAINT

On July 17, 2017, Plaintiff filed a Second Amended Complaint which omitted the claims for *Bivens*/Fifth Amendment violation and the FTCA claim based upon Cal. Civil Code §52.1. [Doc. No. 19.] The SAC also added the following pertinent allegations:

13. Agent Gamboa was responsible for training and handling of his canine. The canine was improperly trained and gave false positive alerts on a regular basis, including identifying substances such as candy as controlled substances. In spite of a knowledge that false positive alerts were being provided by the canine, including substances such as candy, Agent Gamboa failed to take corrective action to have the canine properly trained and used the false positive alerts as a pretext to justify general criminal investigation, including searches and seizures without reasonable suspicion or probable cause.

14. Agent Gamboa improperly handled and/or was improperly trained in the handling of said canine, resulting in false alerts for lawful substances, namely sugar and candy, being identified as unlawful controlled substances. Agent Gamboa knew, that he could not rely on alerts from said canine and multiple false alerts had been provided, and therefore such alerts could not be used to form a reasonable basis for detention, or probable cause for a search and seizure of Plaintiffs. Nevertheless, Agent Gamboa wrongfully proceeded to stop, detain, and search motorists, including said Plaintiffs, for the impermissible purpose of conducting general criminal investigation

without reasonable suspicion or probable cause, and wrongfully used the false alert allegedly given by his canine to justify continued unlawful detention, search and seizure of Plaintiffs and their property, all in violation of clearly established law.

15. As a result of these unlawful acts, Plaintiffs Jose and Maria Villarruel were taken to "secondary" inspection where their vehicle was searched, their lawful candy product was seized, along with Plaintiffs' vehicle and personal belongings, and said Plaintiffs were arrested, taken into custody and criminal charges filed against them.

16. Defendants, United States of America, by and through the United States Customs and Border Protection, Agent Gamboa, Agent Garrett, and Does 1-25, maintained a widespread policy of searching all vehicles referred to secondary inspection regardless of whether probable cause to search existed or not, and without relation to the basis for referral to secondary inspection as part of a widespread violation of the Constitutional rights of motorists, including Plaintiffs Jose and Maria Villarruel, to be free from unreasonable searches and seizures.

17. During the search of Plaintiffs' vehicle, BPA agents found boxes containing packages which were clearly labeled and indicated a tamarind flavored candy brand "Jhonny dulces de tamarindo". "Jhonny dulces de tamarindo" is a brand owned, and sold by Jose Villarruel, Maria Villarruel, and Arturo Villarruel, and was at that time a successful business enterprise both in the United States and in Mexico, and constituted a source of income and employment for Plaintiffs, and each of them.

18. BPA agents, including Agent Gamboa, allegedly performed a field test on said candy which they alleged resulted in a presumptive positive for methamphetamine. The combined weight was allegedly 930.1 pounds, or 421.9 kilograms.

19. At the time BPA agents, including Agent Gamboa, performed the field test on said candy, they were aware that multiple false positive test results had been obtained for lawful substances, including sugar and candy, using the same field test products and procedures.

20. At the time of performing the field test, BPA agents were aware that test results were inherently unreliable and must be confirmed by laboratory testing as the field test frequently provides false positive results on substances which are neither methamphetamine or illegal. Further, on information and belief, BPA agents, including Gamboa, failed to take into consideration the color of dye in candy could cause them to stain the test with colors which would cause the agent misread a negative as a false positive with the field test produce and procedures being utilized.

[Doc. No. 19 at 3-5.]

6

16-CV-2885-CAB-BGS

## DISCUSSION

A. Legal Standard.

On a motion to dismiss pursuant to Rule 12(b)(1), the standard to be applied varies according to the nature of the jurisdictional challenge. A motion to dismiss for lack of subject matter jurisdiction may either attack the allegations of jurisdiction contained in the complaint as insufficient on their face to demonstrate the existence of jurisdiction ("facial attack"), or may be made as a "speaking motion" attacking the existence of subject matter jurisdiction in fact ("factual attack"). *Thornhill Publishing Co. v. General Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir.1979); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d. Cir.1977). If the motion constitutes a facial attack, the court must consider the factual allegations of the complaint to be true. *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir.1981); *Mortensen*, 549 F.2d at 891. If the motion constitutes a factual attack, however, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Thornhill,* 594 F.2d at 733 (*quoting Mortensen*, 549 F.2d at 889).

In an action where the United States is named as a defendant, a court will have no subject matter jurisdiction unless a specific statute can be relied upon which waives the Government's sovereign immunity. *United States v. Alabama*, 313 U.S. 274, 61 S.Ct. 1011, 85 L.Ed. 1327 (1941); *Soriano v. United States*, 352 U.S. 270, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957). "Limitations and conditions upon which the government consents to be sued must be strictly observed and exceptions are not to be implied." Soriano, 352 U.S. at 276, 77 S.Ct. at 273. *See also United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969).

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted"— generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil

Procedure 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand . . . more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the collective facts pled "allow . . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id*. (quoting *Twombly*, 550 U.S. at 557). The Court need not accept as true "legal conclusions" contained in the complaint, id., or other "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

If the court grants a motion to dismiss a complaint, it must then decide whether to grant leave to amend. Under Rule 15(a), when there is no "[u]ndue delay, bad faith[,] dilatory motive on the part of the movant,... undue prejudice to the opposing party by virtue of ... the amendment, [or] futility of the amendment," leave to amend a complaint is to be "freely given." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Generally, leave to amend is denied only if it is clear that the deficiencies of the complaint cannot be cured by amendment. *Broughton v. Cutter Labs*., 622 F.2d 458, 460 (9th Cir.1980).

/ / / / /
/ / / / /
/ / / / /
/ / / / /

B. Analysis.
   1. Failure to state a claim.
      a. First Cause of action.

Defendants argue that the first cause of action should be dismissed because border patrol checkpoints are constitutionally permissible. [Doc. No. 20-1 at 7-10.] First, this is an attempt by Defendants to re-argue a matter that has already been decided by this Court, as the original motion to dismiss this cause of action was denied. [*See* Doc. No. 18 at 6-9.] Moreover, the cases cited by Defendants do not change the analysis, as there is no question that border patrol checkpoints that are not located at the border can be constitutional, assuming they are operated within the bounds of their narrowly circumscribed authority. *United States v. Martinez-Fuerte*, 428 U.S. 543, 556-567 (1976). However, Plaintiffs allege that, in this instance, the BPA had exceeded the permissible administrative purpose of inquiring into the immigration status of persons crossing the checkpoint and were engaged in general criminal investigation without reasonable suspicion or probable cause. [Doc. No. 19 at ¶11.] Such a scenario, if proven, could be unconstitutional. *Id.*; *United States v. Soto-Zuniga*, 837 F.3d 992, 1002 (9th Cir. 2016). The constitutionality of the initial stop would then affect the constitutionality of any subsequent searches, whether by canine alert or otherwise. Therefore, the motion to dismiss the first cause of action of the SAC is **DENIED**.

      b. Second and third causes of action as to Garrett.

Defendants argue that Plaintiffs have not provided sufficient allegations to show that Garrett acted deliberately indifferent when training and supervising Border Patrol agents, and this deliberate indifference resulted in a violation of Plaintiff's rights. [Doc. No. 20-1 at 10-11.] According to Defendants, the SAC merely concludes that Garrett knew or should have known that agents were violating people's constitutional rights, but provides no factual support as to how Garrett should have known about these violations. *Id.*

However, the SAC does now contain additional allegations with regard to prior knowledge. Specifically, the SAC alleges that "Garrett and Does 10 through 25 were aware of a history of false alerts by canine to lawful substances, as well as the fact that the field tests being utilized were resulting in widespread, false positive field test results when, in fact, only lawful substances, such as sugar and candy products, were involved. Said Defendants were aware that as a result thereof, a widespread pattern of citizen's constitutional rights, including the right to be free from unreasonable searches and seizure, were being violated on a widespread basis." [Doc. No. 19 at ¶51.] Finally, the SAC also alleges that "[f]aced with such information, Defendant Scott Garrett and Does 10 through 25 failed and refused to investigate the [*sic*] take corrective measures, provide supervision or training to stop the widespread violations of motorists constitutional rights, and took no remedial steps or action to prevent such violations of constitutional rights from continuing by employees under their supervision and control." [Doc. No. 19 at ¶54.] These allegations state a claim for deliberate indifference in failure to train and supervise. *Ting v. U.S.*, 927 F.2d 1504, 1512 (9th Cir. 1991). Therefore, the motion to dismiss the second and third causes of action as to Garrett is **DENIED.**

c. Second cause of action as to Gamboa.

Similarly, the SAC also adds allegations that Gamboa knew his canine gave false alerts but failed to take corrective action to have the canine properly trained and used the positive alerts as a pretext to justify general criminal investigation. [Doc. No. 19 at ¶13.] Specifically, the SAC alleges Gamboa "knew that he could not rely on alerts from said canine and multiple false alerts had been provided, and therefore such alerts could not be used to form a reasonable basis for detention, or probable cause for a search and seizure of Plaintiffs." [Doc. No. 19 at ¶14.] Given that unreliable dog alerts cannot support a finding of probable cause, *Florida v. Harris*, 133 S.Ct. 1050, 1055 (2013), an allegation that Gamboa knowingly used an unreliable canine does support a claim for deliberate indifference in failure to train. Therefore, the motion to dismiss the second cause of action as to defendant Gamboa is **DENIED**.

10

16-CV-2885-CAB-BGS

    d. Fifth Cause of Action.

  Defendant argues that Plaintiff has failed to state a claim for invasion of privacy because the searches were constitutional and, even if they were not constitutional, privacy expectations are diminished at the border. [Doc. No. 20-1 at 12-13.] First, this Court has already denied a motion to dismiss this cause of action. Moreover, the cases cited by Defendants are not on point, because this stop happened at a border patrol checkpoint away from the border, and therefore does face certain constitutional constraints. *Martinez-Fuerte*, 428 U.S. at 556-567. In addition, there are constitutional constraints to using unreliable canine alerts. *Florida v. Harris*, 133 S.Ct. at 1055. Therefore, any subsequent search of person, vehicle or property could state a claim for invasion of privacy. *Hill v. National Collegiate Athletic* Ass'n, 7 Cal.4th 1, 35 (1994). Accordingly, the motion to dismiss the fifth cause of action is **DENIED**.

    2. Standing.

  Defendant argues that Plaintiff Arturo Villareal lacks standing because the SAC fails to include any specific allegations demonstrating how Arturo Villareal has standing in this lawsuit. [Doc. No. 20-1 at 4-5.] Plaintiffs argue that Arturo Villareal has standing in the fifth (state constitutional invasion of privacy) and sixth (negligence) causes of action because he was a partial owner of the candy that was allegedly wrongfully seized. [Doc. No. 21 at 8-11.]

  As the partial owner of the seized candy, Arturo Villareal had a privacy right to the content of the packages he jointly owned. *Hill v. National Collegiate Athletic* Ass'n, 7 Cal.4th at 35 (1994). Whether Arturo Villareal, or any of the plaintiffs, can obtain damages (or just injunctive relief) for such an invasion is a matter to be addressed at a later time. *See Hernandez v. Hillsides, Inc.*, 47 Cal.4th 272, 286 (2009). Similarly, defendants had a duty of care not to damage property (without justification) belonging to a private citizen. *Brown v. Ransweiler*, 171 Cal.App.4th 516, 534 (2009). Thus, to the extent Plaintiff Arturo Villareal seeks damages for the actual candy that was seized, he has sufficiently alleged standing as the co-owner of said property.

11

## CONCLUSION

For the reasons set forth above, the motion to dismiss regarding the second amended complaint [Doc. No. 20] is **DENIED**. Defendants shall **answer** the SAC by **October 13, 2017**.

**IT IS SO ORDERED.**

Dated: September 20, 2017

_____
Hon. Cathy Ann Bencivengo
United States District Judge